IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHURCH OF UNIVERSAL LOVE AND )
MUSIC et al., )
                              )
        Plaintiffs,           )
                              )  Civil Action No. 10-1422
    vs.                       )
                              )
FAYETTE COUNTY, et al.,       )
                              )
        Defendants.           )

AMBROSE, Senior District Judge

## OPINION AND ORDER

### SYNOPSIS

This civil action arises out of an August 1, 2009, raid conducted by the Fayette County Drug task Force at what Plaintiff Church of Universal Love and Music ("CULM") calls a "religious music event" taking place on CULM property.[1] The raid, and detention and searches of people present at the event, were accomplished pursuant to an "all persons present" warrant. Plaintiffs allege that approximately 800 persons attended the event, 22 of whom were charged with drug offenses following the raid. Plaintiffs claim that the Defendants' actions violated their First Amendment rights to freedom of religion, speech, and association; their Fourth Amendment rights to be free from unreasonable searches and seizures and malicious prosecution. Plaintiffs also aver that Defendants tortiously interfered with the sale of CULM property.

---

[1] CULM was a party to another case in this Court, now closed, arising primarily out of zoning disputes, at Docket No. 6-872. The parties eventually entered into an agreement to settle that case. After the August 1, 2009 raid and arrests, the County and other defendants to that action moved for an injunction, alleging violation of the settlement agreement. Following a hearing, I granted a preliminary injunction; Plaintiffs subsequently consented to a permanent injunction.

Before the Court is Defendants' Motion to Dismiss, on various grounds, accompanied by a request for sanctions. Also pending is Plaintiffs' Motion for leave to amend the Complaint to add more particular allegations. For the following reasons, the Defendants' Motion will be granted in part, and Plaintiff's denied as moot. The Motion for Sanctions will be denied.

## OPINION

### I. APPLICABLE STANDARDS

In deciding a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). A claim is plausible on its face, and not subject to dismissal, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, U.S. , 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility...." Id. at 949. A motion to dismiss will be granted if the plaintiff has not articulated facts sufficient to "raise a right to relief above the speculative level." Bangura v. City of Philadelphia, 338 Fed. Appx. 261 (3d Cir. 2009) (citing Twombly, 127 S. Ct. at 1965). Thus, a "formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65. In the context of a Motion to Dismiss, the Court may take judicial notice of matters of public record pursuant to Federal Rule of Evidence 201.

### II. MOTION TO DISMISS

#### A. First and Fourth Amendments (Counts I and II)

I first address Defendants' argument that Plaintiffs cannot state claims in Counts I and II of the Complaint (asserting violations of the First and Fourth Amendments, respectively), because those Counts are premised on the invalidity of the search warrant supporting the subject raid. Defendants argue that because the warrant has been pronounced valid in state court, Plaintiffs are precluded from relitigating that issue.[2] In support of their argument, Defendants submit three Orders of the Court of Common Pleas of Fayette County. The Orders were entered against non-parties to this action, who were arrested and charged with drug violations as a result of the raid at issue in this case. Each Order arose in the context of the non-parties' motions to suppress evidence in the state criminal matters. In urging that these Orders govern the present Section 1983 action, Defendants rely on Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

Recently, in Rodriguez v. City of Salinas, No. 9-2454, 2011 U.S. Dist. LEXIS 3427, at *10 (N.D. Cal. Jan. 7, 2011), the court considered the same proposition that Defendants now proffer. In that case, a search of plaintiff's residence resulted in the conviction of a third party, whose weapon was found at plaintiff's residence during the search. Id. at **3-5. Plaintiff was charged, but the charges against plaintiff were dismissed. Id. at *5. Plaintiff subsequently brought a Section 1983 action asserting, inter alia, that the search violated the Fourth Amendment. Id. at **5-6. Defendants moved to dismiss plaintiff's complaint, in part on grounds that the claim was precluded by Heck, because success on the Fourth Amendment claim would undermine the third party's conviction. Id. at *13.

---

[2] Defendants also suggest that because I declined to consider a challenge to the warrant in connection with the preliminary injunction, this Court has rejected Plaintiff's challenges to the warrant. At the preliminary injunction hearing, however, I considered only whether the settlement agreement had been breached, and whether standards for injunctive relief were met. I did not consider requirements applicable to probable cause under the Fourth Amendment.

In rejecting the argument, the court observed that Heck involved "'the intersection of the two most fertile sources of federal-court prisoner litigation'-- the habeas corpus statute and Section 1983." Id. at *12 (quoting Heck, 512 U.S. at 480). It further observed that the Heck doctrine focused on ensuring that prisoners do not circumvent habeas remedies. Id. at **12-13. The court stated, "Defendants cite no authority for the proposition that Heck bars a Section 1983 action brought by an individual who has not been convicted of any crime simply because his constitutional claims may have some bearing on the validity of a third party's conviction... ... Here, Plaintiff is not a state prisoner, has not been convicted of any crimes, and does not seek to challenge the legality of his conviction. No habeas remedy is, or ever was, available to him as an alternative remedy for the constitutional violations alleged. Accordingly, the law and reasoning of Heck do not apply." Id. at **11-13.

This case is materially similar to Rodriguez, and I am persuaded by the court's reasoning in that case. Here, none of the present Plaintiffs were parties to the state court criminal cases to which Defendants point, and there is no suggestion that any Plaintiff was convicted of a crime; thus, none of the Plaintiffs had any habeas remedy available to them. I find, therefore, that Heck is inapplicable here. Defendants discuss no other principles of abstention or preclusion with respect to the state courts' probable cause determinations, or any other theory that would define their effect in this forum. Therefore, I will deny Defendants' Motion on grounds that Heck bars Plaintiffs from pursuing Counts I and II of their Complaint.[3] I emphasize, however, that I reach only the argument that Defendants have placed before me, and do not decide whether the state court determinations will affect Plaintiffs' ability to challenge probable cause in this proceeding.

---

[3] While I do not now opine as to its applicability here, I draw the parties' attention to a recent decision by Judge Fischer of this Court, in which she stated, "this Court is not bound by a state court determination of probable cause." O'Hara v. Hanley, No. 8-1393, 2011 U.S. Dist. LEXIS 26180, at *12 (W.D. Pa. March 15, 2011).

I do note, however, that even if Plaintiffs were unable to frontally attack the validity of the warrant, Plaintiffs' First and Fourth Amendment claims would not necessarily be subject to dismissal for failure to state a claim. The fact that a warrant was initially supported by probable cause cannot per se legitimize or immunize all official conduct flowing from that warrant. The Fourth Amendment "not only protects against unreasonable searches, but guarantees that when otherwise lawful searches are conducted, they will be reasonably limited in scope, and carried out in a reasonable manner." Hagler v. Philadelphia Newspapers, No. 96-2154, 1996 U.S. Dist. LEXIS 9931, at *6 (E.D. Pa. July 10, 1996). Similarly, "an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).[4] Here, Plaintiffs do not ground their claims solely in the invalidity of the warrant; they also contend that Defendants' "application of the search warrant" was improper, and that the raid was carried out in a "malicious," "callous" fashion, resulting in constitutional violations.[5] Defendants do not attack the sufficiency of Plaintiff's First and Fourth Amendment claims to the extent that they do not depend on the validity of the search warrant. Accordingly, the claims survive for that additional reason.

### B. Malicious Prosecution (Count III)

---

[4] Defendants cite to Gallis v. Dickson City, No. 5-551, 2006 U.S. Dist. LEXIS 72091 (M.D. Pa. Oct. 3, 2006), in which, although the Third Circuit had not spoken on the issue, the court found that an arrest or criminal citation supported by probable cause cannot be the subject of a First Amendment retaliation claim. Assuming for present purposes that I were to follow Gallis here, that case does not extend to preclude a First Amendment action grounded in the manner in which a search was executed. Moreover, as discussed in the body of the Opinion, at this juncture in this Court, it has not been established that the search warrant was supported by probable cause. Therefore, Gallis does not apply.

[5] Plaintiffs allege, for example, that officers lifted the shirt and pulled the bra front of a minor female Plaintiff, and tore an insulin needle from the stomach of a diabetic Plaintiff, who was working as a security guard at the event in question.

Next, I address Defendants' argument that Plaintiffs have not sufficiently pleaded the elements of a malicious prosecution claim. "A plaintiff anchoring a 1983 claim on an allegedly malicious prosecution must establish both the common law elements of the tort and a 'deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" Kundratic v. Thomas, No. 9-3285, 2011 U.S. App. LEXIS 1509, at *10 (3d Cir. Jan. 25, 2011) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). Success in the underlying proceeding is an essential element of malicious prosecution. Ingram v. Lupas, 353 Fed. Appx. 674, 678 (3d Cir. 2009). Therefore, Plaintiffs cannot maintain a malicious prosecution claim if criminal proceedings were never instituted against them. Pultz v. Whitehead, 49 Pa. D. & C.3d 444, 448-49 (Northampton 1988); see also Outlaw v. Dow, No. 7-5067, 2008 U.S. Dist. LEXIS 38311, at *3 (D.N.J. May 9, 2008).

In this case, Plaintiffs now appear to anchor their malicious prosecution claim in a criminal forfeiture proceeding instituted against CULM property, rather than in the prosecution of any individual Plaintiff.[6] Assuming that such a proceeding can form the basis of a malicious prosecution claim, it cannot do so absent an allegation that the proceeding terminated in plaintiff's favor. Akinola v. Doe, 165 Fed. Appx. 242, 244 (3d Cir. 2006). Plaintiffs state that the forfeiture proceeding is unresolved, however, and they do not contend that any of the individual Plaintiffs were prosecuted or that those proceedings terminated in the individuals' favor. Therefore, they cannot proceed with their malicious prosecution claim, and Count III of the Complaint will be dismissed.

---

[6] Somewhat confusingly, Count III of the Complaint also alleges that the malicious prosecution violated the Settlement Agreement. It is unclear whether Plaintiff intends this as a distinct breach of contract claim, or whether the allegation is intended to "piggyback" on the tort claim. At this juncture, because it is not pleaded separately, I will treat Count III as primarily asserting a claim for malicious prosecution.

### C. Tortious Interference (Count IV)[7]

Next, I reach Defendants' challenge to Plaintiffs' tortious interference claim. The essential elements of the tort are as follows: the existence of a contractual, or prospective contractual relation between the complainant and a third party; purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; the absence of privilege or justification on the part of the defendant; and actual legal damage as a result of the defendant's conduct. Skiff re Business, Inc. v. Buckingham Ridgeview, LP, 991 A. 2d 956, 966 (Pa. Super. 2010). "[A] prospective contract 'is something less than a contractual right, something more than a mere hope[]'...; it exists if there is a reasonable probability that a contract will arise from the parties' current dealings." Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1015 (3d Cir. Pa. 1994) (quoting Glenn v. Point Park College, 272 A.2d 895, 898-99 (Pa. 1971)).

In this case, while Plaintiffs' Complaint suggests the existence of "third party buyers" of the CULM property, and alleges a "contemplated" sale, it does not allege facts sufficient to establish a present or prospective contractual relationship under applicable pleading standards. Accordingly, this claim will be dismissed.

### D. Remaining Arguments

In addition to challenging the foregoing Counts of the Complaint, Defendants raise several arguments regarding the allegations surrounding particular parties to the action. First, they contend that Defendants Vernon and Brooks are improperly sued under a respondeat superior theory of liability. A defendant in a Section 1983 action must have personal involvement in the alleged violations. Smith v. Central Dauphin Sch. Dist., 355 Fed. Appx. 658, 669 (3d Cir. 2009). In this case, the only specific allegation against Defendant Vernon is that she

---

[7] Count III is mislabeled as Count IV in the Complaint.

misrepresented facts to the newspaper, which is not alleged to be illegal. The Complaint suggests her involvement in the allegedly improper warrant, but does not sufficiently specify her role. Defendant Brooks is alleged to have interfered with the sale of CULM property, but is not alleged to have had any personal involvement in the constitutional violations described in the Complaint. The tortious interference claim will be dismissed, as discussed supra, and Plaintiffs have not alleged facts sufficient to state a claim against these Defendants under Section 1983. Thus, the Complaint against Defendants Brooks and Vernon will be dismissed.

Similarly, Defendants contend that Plaintiffs have failed to state a claim against Fayette County and the Drug Task Force, as required by Monell v. New York City Dep't of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Under Monell, municipal liability cannot be imposed based on respondeat superior, but instead will be imposed when the plaintiff demonstrates that the municipality directly caused his injury, through an official policy or custom. Peterson v. Uniontown Police Dep't, No. 9-150, 2011 U.S. Dist. LEXIS 31376, at **3-4 (W.D. Pa. Mar. 4, 2011) (discussing allegations against Fayette County Drug Task Force). In this case, Plaintiffs allege that the Drug Task Force is a law enforcement task force of the County. They also allege, for example, that Defendants' failures to train or discipline police officers caused them constitutional injury, and that the County has a policy of encouraging and authorizing harassment of CULM. At this early point in the proceedings, the allegations are sufficient to state a claim against Fayette County and the Drug Task Force.

Finally, Defendants allege that several of the Plaintiffs have not stated a claim, because, for example, they are not alleged to have been searched or arrested. The Complaint alleges that Plaintiffs Hendricks, Miller, Hanlon, Kimberlye and Ashlye Keffer, Stephens, Whipkey, and Wright were directed -- for example, ordered to the ground -- by visibly armed officers, or were

subjected to forcible physical contact or detention. Such conduct, if improper, may violate the Fourth Amendment. Cf., e.g., Bluedorn v. Wojnarek, No. 7-839, 2008 U.S. Dist. LEXIS 87805, at **25-26 (M.D. Ten. Oct. 29, 2008). Similarly, a threat may violate the constitution if it exerts "coercive pressure on the plaintiff" and deprives the plaintiff of a protected right. See Studli v. Children & Youth & Families Cent. Reg'l Office, 346 Fed. Appx. 804 (3d Cir. Pa. 2009). Likewise, verbal abuse and intimidation may constitute actionable First Amendment retaliation. See Elvig v. Calvin Presbyterian Church, 375 F.3d 951 (9th Cir. 2004). Therefore, Plaintiffs Hendricks, Miller, Hanlon, Kimberlye and Ashlye Keffer, Stephens, Whipkey, and Wright have stated claims for relief.

Defendants also argue, however, that Plaintiffs Ulmstead and Anthony Keffer are alleged only to have observed official conduct; they were not directly subjected to any allegedly wrongful conduct. Regarding Anthony Keffer, the only specific allegation is that he observed the police enter. Similarly, Ulmstead allegedly witnessed officers use profanity and threats against other attendees. The Complaint likewise lacks individual averments regarding Anthony Pritts, Gerald Fagert, and Jacob and Kelly Garletts. Absent unreasonable search, seizure, or use of force against them, these Plaintiffs cannot state a Fourth Amendment claim in the context of this litigation. Moreover, the mere possibility of First Amendment violations as regards these Plaintiffs is far too speculative based on the present allegations.[8] The claims of these Plaintiffs will be dismissed.

## III. MOTION FOR SANCTIONS

Defendants have moved for Rule 11 sanctions, in part on the basis that Plaintiffs are seeking to relitigate issues already decided at the injunction that occurred at docket No. 6-872, a

---

[8] The Complaint states that the raid has deterred Church members from exercising their First Amendment rights. The only clearly stated claim at this point, however, is one for retaliation for the exercise of those rights, rather than a "direct" violation.

separate proceeding that related to the breach of the parties' settlement agreement in that case, or in the criminal matters discussed in Part II of this Opinion, supra. As I noted during the injunction proceeding, that was "a breach of contract case," that did not involve any claim for damages flowing from constitutional violations. That Plaintiffs' counsel at that proceeding attempted to raise the propriety of the search warrant is not relevant. Moreover, as discussed supra, the effect of prior state court determinations on this case has not been established. Sanctions are not warranted, and Defendants' Motion will be denied.

## IV. MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiffs have filed a Motion for leave to amend their Complaint, to add more specific allegations regarding various parties and events. Defendants' sole objection to the Motion rests on the pendency of their Motion to Dismiss. Having disposed of that Motion, I find no reason to preclude Plaintiffs from including their proposed amendments in the amended pleading that they may submit in response to this Opinion and Order.

## CONCLUSION

In sum, under applicable standards, Defendants' Motion to Dismiss will be granted in part and denied in part, in that Counts III and IV, and the claims of Plaintiff Ulmstead and Anthony Keffer, will be dismissed. The dismissal is without prejudice to Plaintiffs to file an amended pleading within ten days, in an effort to cure the deficiencies in the Complaint. In addition, Plaintiffs' Motion to Amend the Complaint will be granted, and Defendants' Motion for Sanctions denied. An appropriate Order follows.

# ORDER

AND NOW, this 15th day of April, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Dismiss (Docket No. [2]) is GRANTED in part, without prejudice, and DENIED in part, as fully set forth in the body of the Opinion. Counts III and IV, and the claims of Plaintiff Ulmstead and Anthony Keffer, are dismissed. Plaintiffs may file an amended pleading within ten (10) days of the date of this Order. Defendants' Motion for Sanctions (Docket No. [6]) is DENIED. Plaintiffs' Motion to Amend/Correct Complaint (Docket No. [7]) is GRANTED.

BY THE COURT:

*Donetta W. Ambrose*

Donetta W. Ambrose

Senior Judge, U.S. District Court