**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHURCH OFUNIVERSAL            )
LOVE AND MUSIC, et al.,       )
                              )
    Plaintiffs,              )   No. 10-1422

    v.

FAYETTE COUNTY, et al.,

    Defendants.


**OPINION AND ORDER**

**SYNOPSIS**

This civil action rests, in part, on the allegedly improper execution of an "all persons

present" search warrant on Plaintiff's property.  Plaintiffs claim that Defendants violated their

First Amendment rights by applying the search warrant to "violently search" plaintiffs for

engaging in protected speech and religious association (Count I); and violated their Fourth

Amendment rights by subjecting them to search and detention without probable cause or

reasonable suspicion (Counts II and III).[1]   Before the Court is Plaintiff's Motion for Partial

Summary Judgment, seeking a judgment that the search warrant was invalid.  Also before the

Court is Defendants' Motion for Summary Judgment.  Defendant seeks a judgment that the

search warrant was valid, and also seeks judgment in its favor on Plaintiffs' various claims for

relief.   For the following reasons, Plaintiff's Motion will be granted, and Defendant's granted in

part and denied in part.

---

[1] Count IV, a claim for tortious interference, was dismissed by Order dated June 30, 2011.

**OPINION**

## I. APPLICABLE STANDARDS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem. Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

## I.  SEARCH WARRANT

Before reaching the validity of the search warrant, I take note of Defendant's contention that the Fourth Amendment is not implicated by the facts of this case, because there was no reasonable expectation of privacy in the public CULM property searched.  I do not, however, understand Plaintiffs' claim to challenge the search of the CULM property.  Instead, it appears that Plaintiffs' challenge is limited to the "all persons" aspect of the warrant, by which the

individuals were searched or detained, and the resulting searches and seizures.   Plaintiffs address

the public nature and large size of the CULM property, and the geographic breadth of the

warrant, in the context of whether it was appropriate to authorize a search of all persons present

on that property.   Defendants do not contend, and nor could they, that the individual Plaintiffs do

not have a reasonable expectation of privacy in their bodies that implicates the Fourth

Amendment.   Accordingly, I need not reach Defendants' contentions regarding the scope of the

CULM property searched.

Thus, I must address Plaintiffs' assertion that the "all persons present" warrant, pursuant

to which they were searched or detained, was not supported by probable cause.[2]   When

reviewing an initial probable cause determination, the reviewing court should consider only the

affidavit before the issuing judge, and should not consider other information of record.   United

States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011); United States v. Hodge, 246 F.3d 301,

305 (3d Cir. 2001).   Thus, "[t]he focus should be on what the affidavit includes, rather than on

what it does not include."   Leveto v. Lapina, 98-143, 2000 U.S. Dist. LEXIS 1972, at *25 (W.D.

Pa. Feb. 5, 2000).

The Fourth Amendment provides as follows:  "The right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be

---

[2]Because my inquiry is limited to the information contained in the affidavit of probable cause; I cannot consider evidence outside of the affidavit -- for example, facts relating to the size of the property or the number of persons present at the concert.  Of course, a warrant may be redacted to excise impermissible terms, maintaining any portions of the warrant that comply with the Fourth Amendment.   United States v. Karrer, 460 Fed. Appx. 157, 163 (3d Cir. 2012).  Moreover, to the extent that Plaintiffs directly attack the incorrect address on the warrant, such errors do not necessarily invalidate the warrant.  Eaton v. Tosti, No. 9-5248, 2010 U.S. Dist. LEXIS 55009 (D.N.J. June 4, 2010).  It is clear that the affidavit described the concert grounds, and not Plaintiff Pritts' private residence. The described concert grounds were searched, and not the private residence.  It is unclear how Plaintiffs contend that the inaccurate address invalidates the warrant.

seized." U.S. Const. amend. IV.  "It is the warrant requirement that protects the individual's legitimate expectation of privacy against the overzealous police officer."  <u>United States v. Abbott</u>, 584 F. Supp. 442, 446 (W.D. Pa. 1984).

An "all persons" warrant presents probable cause issues, rather than particularity issues. A reviewing court has the duty to ensure that the issuing judicial officer had a substantial basis for concluding that probable cause existed.  <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." <u>Brinegar v. United States</u>, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).   The United States Supreme Court has held that generalized statements, such as those regarding "the special circumstances of today's drug culture," may not substitute for individualized evaluation of whether the Fourth Amendment's requirements are satisfied. <u>Richards v. Wisconsin</u>, 520 U.S. 385, 392, 137 L. Ed. 2d 615, 117 S. Ct. 1416 (1997).

In <u>State v. DeSimone</u>, 288 A. 2d 849, 850 (N.J. 1972),[3] the Supreme Court of New Jersey set out what has become the leading approach to "all persons" warrants:

> On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

> . . . . So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive

---

[3] The United States Supreme Court has yet to address the validity of "all persons" warrants.  <u>See</u> <u>Ybarra v. Illinois</u>, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979).

fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated.

A majority of state and federal courts addressing the issue have followed DeSimone's pronouncement that an "all persons" warrant is constitutional if the information given the issuer established probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity.  See, e.g., Owens v. Lott, 372 F.3d 267, 276 (4th Cir. 2004). Otherwise stated, such a warrant is authorized only if "the supporting affidavit establishes probable cause that evidence of illegal activity will be found upon every person likely to fall within the warrant's scope at the time of execution." United States v. Swift, 720 F. Supp. 2d 1048, 1056 (E.D. Ark. 2010).

Decisions of the United States Court of Appeals for the Third Circuit are in accord with DeSimone's approach.  See United States v. Guadarrama, 128 F. Supp. 2d 1202, 1208 n. 6 (E.D. Wis. 2001) (citing Baker v. Monroe Twp., 50 F.3d 1186 (3d Cir. 1995)).  Consistent with DeSimone, in United States v. Abbott, 574 F.3d 203 (3d Cir. 2009), our Court of Appeals stated that "a warrant may authorize the search of all persons present if there is probable cause to believe that a premises is dedicated to criminal activity."  Id. at 212 (citing Lott, 372 F. 3d at 276).[4]   In doing so, the Court of Appeals cited, with approval, the following recitation of

---

[4] In Commonwealth v. Graciani, 554 A. 2d 560, 56203 (Pa. Super. Ct. 1989),  the Pennsylvania Superior Court noted that "it is certainly possible, even probable, that innocent third parties who happen to be at the wrong place at the wrong time may be subjected to searches under such warrants…"  The continued vitality of Graciani, however, is questionable.  "By allowing 'all persons' search warrants even when it was probable that they would authorize searches of 'innocent third parties,' Graciani clearly abandoned the De Simone standard, which requires probable cause as to every person likely to be present."  Guadarrama, 128 F. Supp. 2d at 1210 (emphasis in original). Subsequent to Graciani, however, the Pennsylvania Superior Court returned to DeSimone, holding that "all persons warrants" "are only permissible when the affidavit of probable cause contains sufficient facts to justify a search of everyone found on the premises." Commonwealth v. Wilson, 631 A.2d 1356, 1358 (1993).  In Wilson, although the warrant did not authorize an "all persons" search, the affidavit requested such a warrant.  The court discussed "all persons" warrants, however, because it concluded that the affidavit was insufficient to support such a warrant in any event.  Thus, the fact that an "all persons" warrant had not issued in Wilson does not undermine the court's discussion of such warrants

situations in which an "all persons" warrant might be appropriate:  "a building or apartment used as a crack house, a barn used as a methamphetamine lab, or a warehouse used exclusively as a storage place for arms."  Id. (quoting Marks v. Clarke, 102 F.3d 1012 (9th Cir. 1997)).  Thus, Abbott reflects DeSimone's suggestion that an "all persons" warrant may be suitable with reference to a limited space, used for a limited purpose.

In this case, the affidavit tendered to the issuing judge did not set forth reasonable grounds to believe that all persons on the premises at the time were engaged in criminal activity, or that the premises were dedicated to criminal activity.[5]  The information contained in the affidavit did not suggest a limited space such as a building, barn, or warehouse – instead, it described a variety of apparently open, broadly delineated locations – such as "vendors row," a grassy dirt road running between the stage and camping areas, or the camping sites themselves. Indeed, the affidavit stated that "Persons were spread out enough to be viewed by security or others without effort, the crowd was not large enough to hide illegal acts," strongly suggesting that not every person in that crowd was engaged in illegal acts.   The affidavit also described one man, a food vendor, who indicated to officers that he was not at that time engaged in his usual sales of "pot brownies," because the crowd was not large enough.   The affidavit also refers to various "concert events" held on the property, and that the date the warrant was executed was to be a concert event.   These sentences alone belie reasonable grounds to conclude that all persons present would be engaged in illegal activity at the time of a search, or that the premises were dedicated to criminal activity.

Defendants point out that in August, 2009, I found that there was "pervasive"-- i.e., widespread or prevalent-- drug use on the property.   Widespread drug use, however, does not

_____

[5] "Dedicated" means "designed to carry out only one task, or set aside for a specific purpose."  Encarta Dictionary, Microsoft Word.

equate to a premises devoted to illegal activity, nor does it connote that all persons present are likely involved in such activity. Moreover, my finding post-dated the raid, and reliance thereon would embrace an impermissible after-the-fact justification for probable cause. See United States v. Hughes, 606 F. 3d 311 (6th Cir. 2010). I note, too, that although the warrant is repeatedly referred to as "restricted" to the vending, stage, and camping areas, no such restriction appears on the face of the warrant. No language of limitation is used, and the supporting affidavit recites several instances of observed illegal activity not specified to be in one of those enumerated locations.

The affidavit does not state, nor do the facts recited therein reasonably lead to the conclusion, that evidence of illegal activity would be found upon every person at the "Funk Fest," or even every person in the vending, stage, or camping area of the CULM property. The facts stated in the affidavit simply could not lead one to analogize the subject premises during music concerts, to locations such as an apartment used as a crack house, or a barn used as a methamphetamine lab. Thus, this case echoes Lott:

> At bottom, the search warrant authorized the search of individuals in this case based on nothing more than their proximity to a place where criminal activity may or may not have occurred. And, as the Supreme Court has explained, a person's mere propinquity to suspected criminal activity does not, without more, give rise to probable cause to search that person.

Lott, 372 F. 3d at 279.

In addition, Defendants address two concepts that merit separate mention. First, they suggest that I am bound by the issuing judge's probable cause determination, and by the Court of Common Pleas' determinations, made upon suppression motions filed by non-parties to this action, that the warrant was valid.[6]   As to the former, the execution of a form warrant such as

---

[6] Certainly, the issuing judge's probable cause determination deserves deference. This deference, however, does not mean that I must "rubber stamp" his conclusion. Miknevich, 638 F. 3d at 182.

the one at issue, without evidence of factfinding or legal conclusions, has been held insufficient to warrant preclusive effect in a later Section 1983 action.  See Kovacic v. Cuyahoga County Dep't of Children & Family Servs., No. 5-2746, 2007 U.S. Dist. LEXIS 50046, at * (N.D. Oh. July 9, 2007) (collecting cases) (reversed, in part, on other grounds).  As to the latter, Defendants have not persuaded me that the state court's suppression decision is binding here.  Cf. United States v. Ponce, 947 F. 2d 646, 650 (2d Cir. 1991); Padilla v. Miller, 143 F. Supp. 2d 453 (M.D. Pa. 1999).[7]  There is no indication that the suppression decisions were based on anything other than state law -- the Court of Common Pleas' opinions reference neither federal case law nor the United States Constitution.  Presently, the parties remain silent regarding the relationship between state and federal constitutional requirements, and thus so shall I.  Also, the Court of Common Pleas considered evidence in addition to the probable cause affidavit, which I may not consider under standards applicable here.  Accordingly, those decisions are not binding as to the questions now before this Court.

Second, Defendants suggest that the fact that innocent parties were searched, or present at the time of the search, does not render the warrant invalid.  Indeed, our Court of Appeals has rejected the proposition that "the potential for [innocent parties] to be present negates probable cause with respect to every person who could be in the house."  Abbott, 574 F. 3d at 213. Abbott involved the search of a private residence, as well as an affidavit describing an identified man loitering in front of the residence, meeting with the informant, taking his money, entering the house, returning with heroin, and giving it to the informant, along with a statement regarding the affiant's experience that drugs are frequently sold and stored inside a location.  Id.   Thus,

---

[7] A state court's ruling is binding on a federal court in subsequent proceedings if it is binding under the state's collateral estoppel law. See Doswell v. City of Pittsburgh, No. 7-761, 2009 U.S. Dist. LEXIS 51435, at **17-18 (W.D. Pa. June 16, 2009).  By Order dated April 15, 2011, however, I rejected Defendants' assertion that the state court suppression decisions precluded Plaintiffs from relitigating the probable cause issue.  Presently, Defendants proffer no  preclusion or abstention principles other than those rejected in that Order.

the Court concluded that this established probable cause applicable standards, and that probable cause was not negated by the potential that family or guests might be present at the residence. Id.  Certainly, it is not the possible presence of innocents that is fatal to the warrant presently at issue.  Aside from the other evident and material factual differences between Abbott and this case, probable cause to search all persons present was lacking here in the first instance.

In sum, viewed as a whole, the affidavit did not provide a substantial basis for the issuing judge's finding of probable cause, solely to the extent that it authorized the search of all persons present on the identified premises.  Therefore, Plaintiffs' Motion in that regard must be granted, and that aspect of Defendants' Motion denied.  I emphasize, however, that this conclusion neither constitutes nor compels a finding of liability.  Defendants have asserted several defenses, and their disentitlement to those defenses has not been established.  Likewise, other prima facie elements of Plaintiffs' Section 1983 claims have not yet been proven or determined.  Thus, unless and until those issues are disposed of, I cannot find that Plaintiffs are entitled to a judgment on liability.

## II.  FIRST AMENDMENT RETALIATION

Next, Defendants seek judgment on Plaintiffs' claim that the investigation and raid were conducted in retaliation for CULM's involvement in prior legal proceedings involving Defendants.  In particular, they contend that Plaintiffs cannot prove that the individual Defendants were aware of the proceedings, and thus cannot demonstrate retaliatory motive or causation.  Plaintiffs, however, do not rely on their participation in legal proceedings as the protected conduct that forms the basis of their claim.

Instead, Plaintiffs focus on the execution of the warrant as part of a larger pattern of retaliation for protected speech and religious association – they argue that they "were engaging

in constitutionally protected activity when they attended the event at the Church on the date of the Raid." They assert only that the prior litigation exacerbated Defendants' already-existing animus. Of course, there are activities other than litigation that receive First Amendment protection: "(1) expression of ideas, which is protected by the free speech clause whether the ideas in question are religious or not; and (2) exercise of religion, which may include actions that are not covered by the free speech clause." Salvation Army v. Department of Community Affairs, 919 F.2d 183, 199 (3d Cir. 1990). In addition, people have a protected First Amendment right to associate for religious purposes. Id. Defendants do not seek judgment to the extent that Plaintiffs raise retaliation claims based on First Amendment free exercise, free speech, and free association apart from the prior CULM litigation. Thus, these claims rest unchallenged, and Plaintiffs' First Amendment retaliation claim remains.[8]

## III.  PERSONAL INVOLVEMENT IN CONSTITUTIONAL VIOLATION

Next, I address Defendants' contention that because each Plaintiff is unable to identify the particular officers with whom he or she had unconstitutional contact, the claims must fail. Separately, Defendant Reese also contends that Plaintiffs have not alleged that he committed any constitutional violation. Defendants correctly assert that Section 1983 requires a defendant to have been personally involved in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

As regards Defendants' personal involvement in the alleged violations, Plaintiff Stephens identifies Defendant Fike, and Plaintiff Hendricks identifies an Officer "Reed," which a jury could reasonably deem a reference to Defendant Reese. It is undisputed that Defendant Reese

---

[8] In the event that Defendants seek judgment on the grounds of a lack causal connection or retaliatory motive for any of those claims, "[i]t has long been established that it is inappropriate to resolve issues of credibility, motive, and intent on motions for summary judgment. " Hardin v. Pitney-Bowes, Inc., 451 U.S. 1008, 1008, 101 S. Ct. 2345, 68 L. Ed. 2d 861 (U.S. 1981) (Rehnquist, J., dissenting).

applied for the search warrant, and supervised and was present at the raid.  Likewise, it is

undisputed that Defendant Brooks was involved with obtaining the warrant and was present at its

execution; the affidavit of probable cause states that he acted as a Lead Coordinator of the drug

task force.   "A supervisor's personal involvement may be shown by establishing that the

supervisor had actual knowledge of, and acquiesced in, [a constitutional] deprivation." <u>Robinson

v. City of Pittsburgh</u>, 120 F.3d 1286, 1294 (3d Cir. 1997) (abrogated on other grounds).

Although Defendants challenge the Plaintiffs' credibility, resolving issues of witness

believability and factual conflict is for the jury, and not for the Court on summary judgment.

Thus, the individually named Defendants are not entitled to summary judgment on grounds that

they were not personally involved in the alleged violations.

        Defendant's point, however, raises significant concerns about the status of Defendant

John Doe.  Though named in the singular, that Defendant might encompass any of the thirty-four

officers allegedly involved in the raid who have not been identified or named as defendants.

Although Defendants couch their Motion in terms of the individual Plaintiffs' failure to establish

an actor, and thus to meet their <u>prima facie</u> cases, Defendants' argument essentially seeks relief

on behalf of the Doe officers.   Whether or not Defendants have standing to raise this contention,

Fed. R. Civ. P. 21 provides that "on motion or on its own, the court may at any time, on just

terms, add or drop a party."   Indeed, "[w]here the plaintiff fails to identify which defendant

officer is responsible for the alleged [constitutional violation], there is no evidentiary basis on

which to hold any of the defendants liable." <u>McNeil v. City of Easton</u>, 694 F. Supp. 2d 375, 395

(E.D. Pa. 2010).   Therefore, "[u]se of John Doe defendants is permissible in certain situations

until reasonable discovery permits the true defendants to be identified.…If reasonable discovery

does not unveil the proper identities, however, the John Doe defendants must be dismissed." Blakeslee v. Clinton County, 336 Fed. Appx. 248, 250 (3d Cir. Pa. 2009).

Plaintiffs have produced evidence suggesting that an Officer Christopher Kozlowski came into contact with Plaintiffs Pritts and Miller, but Plaintiffs never attempted to add him to their pleading.   Moreover, Plaintiffs have not identified the female officer – apparently, one of two female officers present at the raid, the other being Defendant Fike – who came into contact with Kimberlye and Ashley Keffer.   Plaintiffs aver that they requested the officer's identity, but that Defendants have not provided that information.  This action commenced by Complaint on October 26, 2010; the Amended Complaint was filed in April, 2011.  In May, 2011, I set a discovery deadline of November, 2011.  That deadline was subsequently extended until February, 2012, then (albeit for a limited purpose) extended again.  At no time did Plaintiff bring alleged non-compliance with discovery to the Court's attention, by Motion or otherwise. Moreover, there is no reason to assume that Plaintiffs did not have reasonable opportunities for discovery, and Plaintiffs do not suggest to the contrary.  In addition, Plaintiffs never sought to amend their Complaint to add the identity of any Doe Defendant.   Lastly, Plaintiffs do not now suggest that any identification of the officers involved with Plaintiffs Wright, Miller, and Hanlon is imminent, likely, or even possible.  Despite the fact that Plaintiffs had ample time to determine officers' identities and amend their pleading accordingly, they did not do so.

I am not eager to dismiss these claims, because of the disagreeable conduct attributed to the unidentified actors.  It is far too late in the proceeding, however, for further discovery and amended pleadings; extending this matter for those purposes would be both disruptive and prejudicial.  Under the circumstances, the interests of both justice and efficiency are best served by dismissing the action as against the Doe Defendant.

## IV.  FOURTH AMENDMENT – DEFENDANT FIKE

Defendants also contend that Officer Fike acted in an objectively reasonable manner when executing the warrant, and therefore she is entitled to judgment in her favor on Plaintiffs' Fourth Amendment claim.[9]   In making their argument, Defendants treat the claim as one for excessive force.   It is not at all apparent, however, that Plaintiffs intend to bring such a claim.  Instead, their Fourth Amendment claim is based on search and detention without sufficient foundation.   The manner in which the warrant was executed appears, instead, to form the premise of a First Amendment retaliation claim.

To the extent that Plaintiffs intend to bring an excessive force claim against Defendant Fike, I must look to "whether, under the totality of the circumstances, [the officer's] actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003).   Moreover, reasonableness is evaluated in light of facts and circumstances including "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Jackson v. City of Pittsburgh, 688 F. Supp. 2d 379, 392 (W.D. Pa. 2010) (quoting Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004)).   Moreover, we must look at the intrusiveness of all aspects of the incident in the aggregate." Baker v. Monroe Twp., 50 F.3d 1186, 1190 (3d Cir. N.J. 1995).   "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Tennessee v. Garner, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).

---

[9] Defendants do not address qualified immunity for any other Officer with respect to the manner of executing the warrant. Thus, any excessive force claim against Defendant Reese – accepting for present purposes that he is the "Reed" that Plaintiff Hendricks identified -- remains.

The crime at issue was the use and possession of illegal substances and related paraphernalia.  Plaintiff Stephens' description of the incident differs only slightly from that of Defendant Fike.   For present purposes, I will accept Plaintiff's version of the facts.  Plaintiff Stephens, who was in a uniform and was armed at the time, was told to get his hands in the air, and he did so.  Defendant Fike frisked him, removed his gun, and then grabbed his insulin pump. He advised her, "that's my Animas pump."   She responded, "what the F's an Animas pump?" Defendant Reese heard, and told her that Stephens was diabetic, and to leave it alone.   She then "backed off."    There is no evidence that Plaintiff resisted Officers, acted in any way that suggested that he posed a threat, or attempted to flee.   Following the incident, Plaintiff Stephens in Plaintiffs' words, suffered "fatigue and discomfort."

Under all of the facts and circumstances, Defendant Fike did not use an objectively unreasonable amount of force.  From the perspective of a reasonable officer on the scene, it was reasonable to handle – even if more roughly than proved necessary – an unidentified pouch on the person of a detained individual known to have been armed.  I find no case law, and Plaintiffs point to none, that would suggest a contrary conclusion under similar facts.   Thus, to the extent that the insulin pump incident is intended to form the basis of an excessive force claim, Defendant is entitled to judgment in her favor thereon.[10]

## V.  IMMUNITY

Next, the individual Defendants assert that they are entitled to immunity.  Defendants Fike and Reese seek qualified immunity for their conduct in executing the search warrant. Further, Defendant Brooks seeks absolute prosecutorial immunity for his participation in the

---

[10] This conclusion does not impact any claim that Defendant Fike's conduct violated the First Amendment. Defendant has not sought judgment on that basis, other than as addressed in the body of the Opinion, supra.

preparation of the warrant and the execution of the warrant.   From the outset, I note that

qualified immunity impacts only individual capacity claims, and Plaintiffs do not indicate that

they bring individual capacity claims.   An individual capacity claim essentially seeks to hold the

officer personally liable for his or her conduct.   See Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct.

358, 116 L. Ed. 2d 301 (1991).   Nonetheless, because of the type of relief sought, I will proceed

under the assumption that they intend to pursue Defendants in their individual capacities.

### 1.   QUALIFIED IMMUNITY

Qualified immunity involves a two-prong inquiry.   The court must "decide whether the

facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation,"

and "whether the constitutional right in question was clearly established." Couden v. Duffy, 446

F.3d 483, 492 (3d Cir. 2006).   This immunity shields government officials from liability as long

as their conduct "does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct.

2727, 73 L. Ed. 2d 396 (1982).

A legal right is "clearly established" if "its contours [are] sufficiently clear that a

reasonable official would understand that what he is doing violates that right." Anderson v.

Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).   "The relevant,

dispositive inquiry in determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Duffy,

446 F.3d at 492.

Having found that the warrant did not comport with constitutional standards, I must

address whether the right at issue was clearly established at the time that the warrant was

executed.   The Supreme Court, and lower courts, have found that "all persons" warrants may be

constitutional under certain circumstances. Beyond the "broad conclusion" that such warrants are not <u>per se</u> unconstitutional, however, "courts impose different requirements for what is necessary to sustain the validity of such a warrant." <u>Lott</u>, 372 F. 2d at 280. Indeed, as set forth at footnote 2, <u>supra</u>, Pennsylvania law was arguably ambiguous at the time the warrant was issued and executed.

In addition, a judge issued the warrant. Although a judge's approval does not <u>per se</u> entitle the officers to qualified immunity, it is not irrelevant. <u>Messerschmidt v. Millender</u>, __U.S.__, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012). Likewise, receipt of favorable advice from a prosecutor – which Reese received in this case -- is a factor. <u>Kelly v. Borough of Carlisle</u>, 622 F. 3d 248, 255 (3d Cir. 2010). Under the circumstances, it would not have been clear to a reasonable officer that it was unlawful to search all persons present on the premises identified in the warrant. I find, therefore, that the pertinent law was not "clearly established" for purposes of qualified immunity. Accordingly, Defendants Reese and Fike, in their individual capacities, are entitled to qualified immunity from suit on Plaintiffs' Fourth Amendment claim, as it relates to the fact that they executed an unconstitutional "all persons" search warrant.

## 2. **PROSECUTORIAL IMMUNITY**

Next, Defendants contend that Brooks is entitled to absolute prosecutorial immunity on the claims against him. Absolute prosecutorial immunity affixes to actions "intimately associated" with the judicial aspects of litigation, but not to administrative and investigatory conduct not related to conducting or initiating judicial proceedings. <u>Odd v. Malone</u>, 538 F. 2d 202, 208 (3d Cir. 2008). "[W]hen prosecutors perform investigatory functions, like determining whether there is probable cause…, they are entitled only to qualified, and not absolute, immunity." <u>Walker v. Clearfield County DA</u>, 413 Fed. Appx. 481, 483 (3d Cir. Pa. 2011). The

entitlement to absolute prosecutorial immunity is a fact-intensive inquiry; it requires careful

consideration of the prosecutor's actions. <u>Malone</u>, 538 F.3d at 210.   Nonetheless, there is a

presumption that qualified immunity, and not absolute immunity, applies.  <u>Burns v. Reed</u>, 500

U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991).  Accordingly, a Defendant bears a "heavy

burden" to demonstrate entitlement to absolute immunity.  <u>Malone</u>, 538 F. 3d at 207-08.

> A prosecutor, acting within the scope of his duties in initiating and
> pursuing a criminal prosecution, is absolutely immune from a civil suit for
> damages under 42 U.S.C. § 1983. Preparation for the initiation of a criminal
> prosecution and for a trial often require the obtaining, reviewing and evaluation
> of evidence, making the distinction between necessary and excessive
> investigation an extremely clouded one. If, however, it is determined that the
> activities of a prosecutor are purely investigative and police related in nature and
> beyond the scope of his prosecutorial duties, the protection of absolute immunity
> from civil liability is lost.

> <u>Pachaly v. Lynchburg</u>, 897 F.2d 723, 727 (4th Cir. Va. 1990) (citations omitted).

Thus, "in providing advice to the police, the prosecutor act[s] to guide the police, not to

prepare his own case." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 286, 113 S. Ct. 2606, 125 L. Ed.

209 (U.S. 1993).  Under such circumstances, there is an "insufficient link between the judicial

process and the prosecutor's actions to warrant absolute immunity."  <u>Id.</u>

In this case, Defendant Brooks is alleged to have been present on CULM property when

the warrant was executed.  Plaintiffs aver that he was acting as a supervisor for the raid.

Defendant Brooks' testimony, as well as the affidavit of probable cause, indicates that he went to

the CULM property on two occasions, in May and July.  On both occasions, Defendant Brooks

was working undercover.  The affidavit of probable cause suggests that he was present in his

capacity as the Lead Coordinator of the Fayette County Drug Task Force.   In Defendant Brooks'

own words, the task force is an investigatory body.  "[T]he supervision and control of a

municipal task force appears to fall under the administrative, not prosecutorial, duties of the

district attorney." <u>Barnes v. City of York</u>, No. 10-1684, 2011 U.S. Dist. LEXIS 40010, at **16 (M.D. Pa. Mar. 24, 2011).

Moreover, "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation." <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 343, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009).  It has been said that "a prosecutor who assists, directs or otherwise participates . . . in obtaining evidence prior to an indictment undoubtedly is functioning more in his investigative capacity than in his quasi-judicial capacities of 'deciding which suits to bring and . . . conducting them in court." <u>Marrero v. Hialeah</u>, 625 F.2d 499, 505 (5th Cir. 1980).  Carefully considering all of the facts at hand, I conclude that Defendant Brooks was not acting within the scope of his prosecutorial duties when he participated in the investigation, preparation, and execution of the search warrant.  He is not, therefore, entitled to absolute immunity from Plaintiffs' suit in that regard, and Defendants' Motion will be denied to that extent.[11]

## V.  <u>MONELL</u> CLAIMS

Finally, I address Defendants' contention that Plaintiffs' <u>Monell</u> claims must fail, because they have not identified a government policy or custom.   Plaintiffs did not initially address this challenge, but at the Court's behest, they have clarified that their <u>Monell</u> claim is grounded in a failure to train officers regarding the parameters of "all persons present" warrants, and also an ongoing practice of persecuting CULM.

A failure to train claim requires a plaintiff to identify specific training not provided that could reasonably be expected to prevent the injury that occurred.  <u>Joines v. Twp. of Ridley</u>, 229 Fed. Appx. 161 (3d Cir. 2007).  Moreover, when relying on a failure to train employees, a plaintiff must show that the failure amounts to deliberate indifference to the rights of persons

---

[11] Defendants do not contend that Defendant Brooks is entitled to qualified immunity, and do not discuss qualified immunity standards with respect to Defendant Brooks.  I will not do so <u>sua sponte</u>.

with whom the employees will come into contact.   <u>City of Canton v. Harris</u>, 489 U.S. 378, 388,

103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).   In this instance, Plaintiffs do not point to any

evidence whatsoever regarding the individual Defendants' training with respect to warrants or

otherwise.  They merely point to Defendant Reese's statement that he has never heard that "'all

persons present' warrants are not appropriate in public places…."  This does not reflect on the

substance or adequacy of his training regarding such warrants.  The utter lack of evidence

regarding the individual Defendants' training, or the educational practices of the Task Force or

municipality, is fatal to Plaintiffs' failure to train claim.  There is absolutely nothing in the record

that would permit a jury to assess the sufficiency or effect of any Defendant's training or related

practices.  Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's

<u>Monell</u> claim based on failure to train.

The inadequacy of Plaintiffs' failure to train claim, however, is not conclusive of

Plaintiffs' remaining, broadly painted <u>Monell</u> claim.  Plaintiffs suggest that taken together with

the actions of other municipal actors, Defendants' conduct reflect an overarching custom or

policy of harassing CULM – either by affirmative harassment or indifference to that harassment.

"<u>Monell</u>'s policy or custom requirement is satisfied where a local government is faced with a

pattern of misconduct and does nothing, compelling the conclusion that the local government has

acquiesced in or tacitly authorized its subordinates' unlawful actions." <u>Reynolds v. Giuliani</u>, 506

F.3d 183, 192 (2d Cir. 2007).  Moreover, actions taken by a municipal legislative body may

constitute an official policy to which liability could attach.  <u>Pembaur v. City of Canton</u>, 475 U.S.

469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

Here, much of the contentious history between CULM and the municipality is a matter of public record, involving multiple municipal actors and multiple acts.[12]   While those actors -- other than Fayette County -- are not defendants to the instant litigation, their story provides a backdrop to the present allegations.  Plaintiff points, for example, to its history of legal proceedings involving the zoning hearing board and County Commissioners.  The conclusion of those proceedings were followed by the raid at issue here, which resulted in further proceedings in federal court.  In addition, a <u>Monell</u> claim may lie when a policymaker authorized or acquiesced in policies that led to constitutional violations.  <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1064 (3d Cir. 1991).[13]

Here, there is evidence that policymakers authorized or acquiesced in the warrant, which I have found did not comport with the Fourth Amendment, and its execution.  Defendant Brooks, for example, acting in his administrative – rather than prosecutorial – capacity, may be considered a policymaker for the County Defendant.  <u>See</u> <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 352 (3d Cir. 1999).  Moreover, Defendant Reese testified that he supervised the raid.  Likewise, I have previously found issues of fact – which were never resolved -- surrounding municipal actors' animus towards CULM.[14]   In other words, the larger picture of multiple instances of conduct attributable to the municipality, and directed towards Plaintiffs, constitutes more than a scintilla of evidence.  Taken together, this evidence precludes me from granting judgment in Defendant's favor on Plaintiffs' <u>Monell</u> claim.  Although Plaintiffs' <u>Monell</u> claim is

---

[12] <u>See, e.g.</u>, Order dated August 26, 2008, at C.A. 6-872 (reciting facts giving rise to that litigation); <u>Long v. Bristol Twp.</u>, No. 10-1069, 2012 U.S. Dist. LEXIS 96591, at *65-66 (E.D. Pa. July 12, 2012) (conduct of zoning board and officers may give rise to municipal liability).  CULM's litigation at C.A. 6-782 resulted in a settlement agreement between the parties.  Following the raid at issue in this case, that litigation also saw a motion to enforce that settlement based on the raid, and a resulting consent order.  "

[13] The court must look to state law to determine whether an individual is a final decision-maker for purposes of this inquiry.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988),

[14] In C.A. 6-782, I found "serious questions as to whether the Fayette ZHB denied Plaintiffs' [petitions for legitimate reasons, or]…because of a general animus or distrust."  Plaintiffs raise this history in their summary judgment papers, and Defendants do not challenge its relevance for present purposes.

not a model of clarity, I cannot conclude conclusively that Plaintiffs are unable to demonstrate the necessary elements of municipal liability for all aspects of this litigation.

## CONCLUSION

In sum, Plaintiffs' Motion for Summary Judgment will be granted to the extent stated in the body of the Opinion, and Defendants' will be granted in part and denied in part.

An appropriate Order follows.

**ORDER OF COURT**

AND NOW, this 31st day of August, 2012, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment [37] is GRANTED in part, and Defendant's Motion for Summary Judgment [42] is GRANTED in part and DENIED in part, as follows:

Summary Judgment is entered in Plaintiffs' favor solely on the issue that the warrant to search "all persons present" was not supported by probable cause, and thus violated the Fourth Amendment;

Summary Judgment is entered in favor of Defendant Fike on any Fourth Amendment claim for use of excessive force against Plaintiff Stephens;

Defendants Fike and Reese are entitled to qualified immunity from suit on any claim grounded in the fact that they executed an invalid "all persons present" warrant;

Summary Judgment is entered in favor of Defendants on Plaintiffs' failure to train claim; and

The Amended Complaint is dismissed as against all Doe Defendants.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court